**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY,<br><br>                Plaintiff,<br><br>     v.<br><br>HERSHARE FINANCIAL CORPORATION, STATE BANK OF HERSCHER, SIMS BUSINESS ENTERPRISES LP, WAYNE K. SIMS, PROVEN PARTNERS MANUFACTURING, LLC, and KEVIN K. SIMS,<br><br>                Defendants. | Case No. _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff St. Paul Mercury Insurance Company ("Travelers") seeks declaratory judgment against defendants Hershare Financial Corporation ("Hershare"), State Bank of Herscher (the "Bank"), Sims Business Enterprises LP ("Sims Business"), Wayne K. Sims, Proven Partners Manufacturing, LLC ("Proven Partners"), and Kevin K. Sims[1], pursuant to 28 U.S.C. §§ 2201 and 2202. In support of its Complaint, Travelers states as follows:

**PRELIMINARY STATEMENT**

1.  This is a lawsuit for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 to determine the rights and obligations of the parties under a Travelers SelectOne for Community Banks Policy (the "Policy"). This coverage dispute arises out of an underlying lawsuit filed against Hershare and the Bank[2] captioned *Sims Business Enterprises LP, et al. v. Hershare Financial Corporation, et al.,* Case No. 15L112, which is pending in the Circuit Court

---

[1] Sims Business, Wayne K. Sims, Proven Partners, and Kevin K. Sims are collectively referred to in this Complaint as the "Sims Parties."

[2] Hershare and the Bank are collectively referred to in this Complaint as the "Hershare Parties."

of the 21st Judicial Circuit, Kankakee County, Illinois (the "Sims Lawsuit"). In the Sims Lawsuit, the Sims Parties assert claims against Hershare and the Bank for alleged misrepresentations and failures made in connection with the Sims Parties' purchase of subordinate debentures (the "Debentures"). Travelers seeks a declaration that it does not have any coverage obligations to the Hershare Parties with respect to the Sims Lawsuit.

## PARTIES

2. Travelers is an insurance company incorporated under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut. Travelers, therefore, is a citizen of Connecticut.

3. Upon information and belief, Hershare is a bank holding company, which was incorporated in Delaware, and maintains its principal place of business in Herscher, Illinois. Hershare, therefore, is a citizen of Illinois and Delaware.

4. Upon information and belief, the Bank is an Illinois banking corporation and, at all times referenced in the Sims Lawsuit, was a subsidiary of Hershare. The Bank's executive and principal offices are located in Herscher, Illinois and the Bank operates bank branches in Herscher and Kankakee, Illinois. The Bank is, therefore, a citizen of Illinois.

5. Upon information and belief, Wayne K. Sims is domiciled in Kankakee, Illinois and is, therefore, a citizen of Illinois.

6. Upon information and belief, Kevin K. Sims is domiciled in Naperville, Illinois and is, therefore, a citizen of Illinois.

7. Upon information and belief, Proven Partners is an Illinois limited liability company, whose principal place of business is located at 1111 Bowes Road, Elgin, Illinois. After conducting a reasonable investigation and consulting public sources, including information disclosed by the Illinois Secretary of State, court files and other public records, Travelers has

determined that the identity and citizenship of Proven Partners' members is not publically available. However, based upon limited publically available information, as well as the allegations and exhibits of the Sims Parties' complaint in the Sims Lawsuit, Travelers is informed and believes that Proven Partners' members are domiciled in, and citizens of, Illinois, and not Connecticut, and, therefore, that Proven Partners is a citizen of Illinois and is not a citizen of Connecticut.

8.  Upon information and belief, Sims Business is a Delaware limited partnership, and its principal place of business is located at 1111 Bowes Road, Elgin, Illinois. After conducting a reasonable investigation and consulting public sources, including information disclosed by the Delaware Division of Corporations, court files and other public records, Travelers has determined that the identity and citizenship of Sims Business' members is not publically available. However, based upon limited publically available information, as well as the allegations and exhibits of the Sims Parties' complaint in the Sims Lawsuit, Travelers is informed and believes that Sims Business' members are domiciled in, and citizens of, Illinois, and not Connecticut, and, therefore, that Sims Business is a citizen of Illinois and is not a citizen of Connecticut.

9.  The Sims Parties are named as defendants in this coverage action because the Sims Parties have asserted a claim against the Hershare Parties, for which the Hershare Parties request insurance coverage under the Policy, and any rights the Sims Parties may have with respect to insurance coverage for that claim may be affected by the outcome of this action. Travelers seeks no separate relief or judgment against the Sims Parties, but only seeks to bind them to the outcome of this coverage dispute.

## JURISDICTION AND VENUE

10. Pursuant to 28 U.S.C. § 1332, federal subject matter jurisdiction exists in this action because, on information and belief, the parties are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. Venue is proper in this judicial district under 28 U.S.C. § 1391 (b)(1) because defendants Kevin Sims, Proven Partners and Sims Business are residents of this judicial district and all defendants are residents of Illinois.

## THE POLICY

12. Travelers issued the Policy to Hershare Financial Corporation, under policy no. 14P87012-12-N2, with a policy period of April 1, 2012 to April 1, 2013, and an extended discovery period to April 1, 2014. The Policy contains several separate insuring agreements, including a Management Liability Insuring Agreement. A true and correct copy of the Policy is attached to, and incorporated by reference in, this Complaint as **Exhibit 1**.

13. The Policy's Management Liability Insuring Agreement includes a Company Liability coverage part, which contains a Limit of Liability of $2,000,000 for each Policy Year and a $50,000 Retention for each covered Claim. (Ex. 1, Declarations, CB001)

14. The Policy's Management Liability Insuring Agreement, Company Liability Coverage part, states, in relevant part, as follows:

> **Company Liability Coverage**
> If **Company Liability Coverage** is granted as set forth in the Declarations, the Insurer shall pay on behalf of the Company Loss for which the Company becomes legally obligated to pay on account of any Claim first made against the Company during the Policy Period, the Automatic Discovery Period, or, if exercised, the Additional Extended Discovery Period, for a Management Practices Act taking place before or during the Policy Period.

(*Id.*, Management Liability Insuring Agreement, CB003)

4

15. The Policy contains the following definitions, among others:

**Claim** means the following, including any appeal therefrom:

(a) a written demand against any Insured for monetary damages or nonmonetary relief;

(b) a civil proceeding against any Insured commenced by the service of a complaint or similar pleading;

\*\*\*

on account of a Wrongful Act.

\*\*\*

**Damages** means:

(a) compensatory damages;

(b) punitive or exemplary damages;

(c) the multiple portion of any multiplied damage award; or

(d) under the **Employment Practices Liability Coverage** only, liquidated damage awards pursuant to the Age Discrimination in Employment Act or the Equal Pay Act, including any amendments thereto.

**Defense Costs** means that part of Loss consisting of reasonable costs, charges, fees (including attorneys' fees, experts' fees, and mediators' or arbitrators' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, trustees, members of the board of managers, officers or employees of the Insurer, Company or Plan) incurred in defending or investigating a Claim, and the premium for appeal, attachment or similar bonds.

\*\*\*

**Insured** means:

(a) the Insured Persons;

(b) the Company, except the Company shall not be an Insured with respect to the **Directors and Officers Individual Coverage**; and

5

***

**Insured Persons** means:

(a) Directors or Officers;

(b) only with respect to any Bankers Professional Liability Insuring Agreement and Trust Liability Insuring Agreement made part of this Policy, Employees; and

(c) only to the extent that coverage is granted as set forth in the Declarations, Employees, Leased Employees and Independent Contractors.

***

**Loss** means the amount which the Insureds become legally obligated to pay on account of each Claim and for all Claims made against them during the Policy Period, the Automatic Discovery Period or, if exercised, the Additional Extended Discovery Period, for Wrongful Acts for which coverage applies, including Damages, judgments, settlements and Defense Costs. Loss does not include:

(a) any amount for which the Insureds are absolved from payment;

(b) taxes, or fines or penalties imposed by law, provided that this exception to the definition of Loss shall not apply under any Fiduciary Liability Insuring Agreement made part of this Policy to the 5% or less, or the 20% or less, civil penalties imposed upon an Insured under Section 502(i) or (l), respectively, of ERISA;

(c) any unrepaid, unrecoverable or outstanding loan, lease or extension of credit to any Affiliated Person or Borrower;

(d) dividends or other distributions of corporate profits;

(e) any amounts that constitute inadequate consideration in connection with the Company's purchase of securities issued by any Company; or

(f) matters uninsurable under the law pursuant to which this Policy is construed; provided that Damages shall be deemed insurable under this Policy if such Damages are insurable under the law of any jurisdiction that is most favorable to the insurability of such Damages and has a substantial relationship to the Insureds, the Claim, the Insurer, or this Policy.

**Management Practices Act** means:

6

    (a) any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by any Insured Person in their capacity as such, or in an Outside Position or, with respect to the **Company Liability Coverage**, by the Company; or

    (b) any matter claimed against the Insured Persons solely by reason of their serving in such capacity or in an Outside Position.

Management Practices Act does not include (i) a Fiduciary Act; or (ii) any conduct actually or allegedly committed or attempted by any Insured Person in their capacity as a director, officer, trustee, governor, member of the board of managers, or any equivalent position, or employee of any entity other than the Company, even if service in such capacity is with the knowledge and consent of, at the direction or request of, or part of the duties regularly assigned to the Insured Person by the Company, except in their capacity in an Outside Position.

With respect only to any **Company Liability Coverage**, Management Practices Act also does not include an Employment Practices Act, Trust Act, Lending Act or Professional Services Act.[3]

\*\*\*

**Wrongful Act** means Employment Practices Act, IRA/Keogh Act, Fiduciary Act, Lending Act, Management Practices Act, Professional Services Act, and Trust Act, but only to the extent that coverage is granted for such acts pursuant to an Insuring Agreement made part of this Policy.

\*\*\*

(*Id.*, General Terms, Conditions and Limitations ("GTC&L"), CB007)

    16.    The Policy provides that the Insureds, i.e. the Hershare Parties, have the duty to defend any covered Claims, and Travelers has no obligation to defend Insureds under the Policy. Specifically, the Management Liability Insuring Agreement's Duty to Defend provision states, in relevant part:

---

[3] The definition of Management Practices Act is modified in the Policy by an endorsement, which provides that, with respect to any Directors and Officers Individual Coverage and Company Indemnification Coverage, Management Practices Act also does not include an Employment Practices Act, Trust Act, Lending Act, or Professional Services Act. (*Id.,* CB108)

7

**Duty to Defend Provision**

\*\*\*

If the Duty of the Insureds to Defend is selected as set forth in the Declarations, then subject to the provisions of the Defense and Settlement section of the General Terms, Conditions and Limitations, it shall be the duty of the Insureds and not the duty of the Insurer to select counsel and defend any Claim covered by this Insuring Agreement.

\*\*\*

(*Id.,* Management Liability Insuring Agreement, CB0003)

17. According to the Policy's Declarations, Hershare specifically chose the "Duty of the Insureds to Defend" option, under the Management Liability Insuring Agreement, for any covered Claims. (*Id.,* Declarations, CB001)

18. Where, as here, the Insured chooses the "Duty of the Insureds to Defend" option, the Policy further provides as follows with regard to the advancement of Defense Costs by Travelers:

**Duty of the Insureds to Defend**

If Duty of the Insureds to Defend is selected as set forth in the Declarations under an Insuring Agreement made part of this Policy, it shall be the duty of the Insureds and not the duty of the Insurer to select defense counsel and defend any Claim covered by such Insuring Agreement under this Policy.

With respect to any Claim submitted for coverage under such Insuring Agreement, the Insurer shall have the right and shall be given the opportunity to effectively associate with, and shall be consulted in advance by, the Insureds regarding: (a) the selection of appropriate defense counsel; (b) substantive defense strategies, including decisions regarding the filing and content of substantive motions; and (c) settlement negotiations.

Subject to the Allocation section, the Insurer shall advance, on behalf of the Insureds, Defense Costs which the Insureds have incurred in connection with Claims made against them, before disposition of such Claims, provided that to the extent that it is finally established that any such Defense Costs are not covered under this Policy, the Insureds,

8

> severally according to their respective interests, agree to repay the Insurer such Defense Costs.

(*Id.,* GTL&C, CB007)

19. Subject to all other applicable Policy terms and conditions, in order to trigger coverage under the Policy, the Insured must provide Travelers with notice of a Claim as soon as practicable, but in no event later than 60 days after expiration of the Policy Year in which the Claim was first made, or within the Automatic Discovery Period, if applicable, or the Additional Extended Reporting Period, if elected. Specifically, the Policy contains the following Notice provision, in relevant part:

> **<u>Notice</u>**
>
> The Insureds shall, as a condition precedent to their rights under this Policy, give to the Insurer written notice of any Claim made against the Insureds as soon as practicable, but in no event later than: (a) sixty (60) days after expiration of the Policy Year in which the Claim was first made; or (b) the expiration of the Automatic Discovery Period or, if exercised, the Additional Extended Discovery Period.
>
> If during the Policy Period, the Automatic Discovery Period or, if exercised, the Additional Extended Discovery Period, the Insureds become aware of circumstances which could give rise to a Claim for a Wrongful Act taking place before or during the Policy Period and give written notice of such circumstances and the other information referenced below to the Insurer during the Policy Period, the Automatic Discovery Period or, if exercised, the Additional Extended Discovery Period, then any Claims subsequently arising from such circumstances shall be considered to have been made during the Policy Year, the Automatic Discovery Period or, if exercised, the Additional Extended Discovery Period in which such notice of such circumstances and such other information was first given to the Insurer.
>
> The Insureds shall, as a condition precedent to exercising their rights under this Policy: (a) include within any notice of Claim or circumstance a description of the Claim or circumstances, the nature of the alleged Wrongful Act, the nature of the alleged or potential damage, the names of actual or potential claimants and Insureds involved, and the manner in which the Insureds first became aware of the Claim or circumstances; and

9

>(b) give to the Insurer such other information and cooperation as the Insurer may reasonably request.

***

(*Id.*, GTC&L, CB007)

20. The Policy provides as follows, in relevant part, with respect to the Policy's Automatic Discovery Period:

>**Automatic Discovery Period**
>
>If the Insureds or the Insurer nonrenews or terminates this Policy or any Insuring Agreement made part of this Policy, except for termination due to non-payment of premium, coverage provided under this Policy or such Insuring Agreement shall be automatically extended for the period of sixty (60) days following the effective date of such nonrenewal or termination, (herein called the "Automatic Discovery Period"), but only with respect to a Wrongful Act otherwise covered thereunder taking place before the effective date of such nonrenewal or termination. Any Claim made during the Automatic Discovery Period shall be deemed to have been made during the Policy Year immediately preceding the Automatic Discovery Period.

(*Id.*, GTC&L, CB007)

21. The Policy includes the following provision, by virtue of the Policy's Illinois Amendatory Endorsement, with respect to the Additional Extended Discovery Period:

***

>3. The first paragraph of the Additional Extended Discovery Period subsection of this Policy is replaced by the following:
>
>If the Insureds or the Insurer nonrenews or terminates this Policy or any Insuring Agreement made part of this Policy, the Insureds shall have the right, upon payment of the additional premium described below, to an extension of the coverage granted under this Policy or such Insuring Agreement for the period set forth in the Declarations ("Additional Extended Discovery Period"), which shall not be less than twelve (12) months, following the effective date of such nonrenewal or termination, but only with respect to a Wrongful Act otherwise covered thereunder taking place before the effective date of such nonrenewal or termination. This right of extension shall lapse unless written notice of such election,

10

> together with payment of the additional premium due, is given by the Insureds to the Insurer within sixty (60) days following the effective date of nonrenewal or termination. Any Claim made during the Additional Extended Discovery Period shall be deemed to have been made during the Policy Year immediately preceding the Additional Extended Discovery Period.

(*Id.*, Illinois Amendatory Endorsement, CM010)

22. Upon the Policy's expiration, Hershare elected to purchase an Additional Extended Discovery Period, effective April 1, 2013 to April 1, 2014. (*Id.*, Election of Additional Extended Discovery Period Endorsement – For Entire Policy, PV028)

23. Consequently, in order to trigger the Policy's coverage, a Claim had to be made, or be considered to have been made, no later than April 1, 2014. In no event could a Claim made, or considered to have been made, after April 1, 2014 satisfy the Policy's "claim made" requirement.

## **THE SIMS CLAIM**

24. On April 20, 2015, the Sims Parties, through their counsel, sent a letter to the Hershare Parties, through their counsel, making a demand for monetary damages on account of allegedly wrongful conduct by the Hershare Parties in connection with the sale and purchase of the Debentures (the "Sims Claim"). A true and correct copy of the April 20, 2015 letter constituting the Sims Claim is attached to this Complaint as **Exhibit 2**.

25. On May 18, 2015, the Hershare Parties' counsel sent a letter (the "May 2015 Letter") to Travelers, pursuant to which the Hershare Parties notified Travelers of the Sims Claim and tendered the Sims Claim to Travelers.

26. The May 2015 Letter was Travelers' first notice of the Sims Claim.

27. On June 19, 2015, pursuant to the applicable provisions of the Policy, and applicable law, Travelers declined Hershare's request for coverage for the Sims Claim because

11

the Claim was not first made during the Policy Period, the Automatic Discovery Period or Additional Extended Discovery Period. Travelers further reserved the right to disclaim or otherwise limit coverage based on other applicable reasons and Policy provisions.

28. Through the June 19, 2015 letter, Travelers further advised the Hershare Parties that the Sims Claim could not be considered to have been made during the Policy Period, the Automatic Discovery Period or Additional Extended Discovery Period because Travelers did not receive, during any of those periods, notice of circumstances which could give rise to the Sims Claim.

## THE SIMS LAWSUIT

29. On September 30, 2015, the Sims Parties filed the Sims Lawsuit against the Hershare Parties, asserting causes of action premised on the Hershare Parties' alleged wrongful conduct in connection with the sale and purchase of the Debentures, i.e. the alleged wrongful conduct asserted in the Sims Claim. A copy of the complaint filed in the Sims Lawsuit, as tendered to Travelers by Hershare, is attached to this Complaint for Declaratory Judgment as **Exhibit 3**.

30. In the Sims Lawsuit, the Sims Parties allege that, in or about July of 2011, the Hershare Parties approached the Sims Parties to solicit their investment in the Debentures.

31. In the Sims Lawsuit, the Sims Parties further allege that, because of the Bank's numerous promises to the Sims Parties to enforce strict lending controls and to adopt policies and procedures to ensure the Bank's financial stability, the Sims Parties collectively invested in $7,000,000 worth of Debentures on July 13, 2011.

32. In the Sims Lawsuit, the Sims Parties assert causes of action against the Hershare Parties for (1) Violation of the Illinois Securities Law of 1953, Section 12(F) (Count 1); (2)

Violation of the Illinois Securities Law of 1953, Section 12(G) (Count II); (3) Violation of the Illinois Securities Law of 1953, Section 12(H) (Count III); (4) Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count IV); (5) Common Law Fraud (Count V); (6) Breach of Contract with Sims Business (Count VI); (7) Breach of Contract with Wayne K. Sims (Count VII); (8) Breach of Contract with Kevin K. Sims (Count VIII); and (9) Breach of Contract with Proven Partners (Count IX).

33. On October 13, 2015, Hershare requested that Travelers indemnify it for expenses, legal fees, and other defense costs for, as well as any judgment entered against it in the Sims Lawsuit.

## COUNT I
## (DECLARATORY JUDGMENT)

34. Travelers realleges and incorporates by reference paragraphs 1-33 above as if set forth fully in this paragraph 34.

35. Under the Policy's Management Liability Insuring Agreement, Company Liability Coverage provides:

> **Company Liability Coverage**
> If **Company Liability Coverage** is granted as set forth in the Declarations, the Insurer shall pay on behalf of the Company Loss for which the Company becomes legally obligated to pay on account of any Claim first made against the Company during the Policy Period, the Automatic Discovery Period, or, if exercised, the Additional Extended Discovery Period, for a Management Practices Act taking place before or during the Policy Period.

(Ex. 1, Management Liability Insuring Agreement, CB003)

36. Subject to the Policy's terms, conditions, and exclusions, the Policy only affords coverage for "Claims first made against the Company during the Policy Period, the Automatic Discovery Period, or, if exercised, the Additional Extended Discovery Period." (*Id.*)

13

37. The Policy's definition of "Claim" includes "a written demand against any Insured for monetary damages or nonmonetary relief" or "a civil proceeding against any Insured commenced by the service of a complaint or similar pleading" on account of a Wrongful Act. (*Id.,* GTC&L, CB007)

38. The Sims Claim was first made on or about April 20, 2015, when the Sims Parties sent the Hershare Parties a written demand for monetary damages on account of the Hershare Parties' alleged wrongful conduct in connection with the sale of the Debentures.

39. The Sims Claim, which the Sims Parties now prosecute in the Sims Lawsuit, does not constitute a Claim first made during the Policy Period, the Automatic Discovery Period or Additional Extended Discovery Period, as it was first made long after the expiration of the Policy Period (April 1, 2013), the 60-day Automatic Discovery Period, if applicable (May 31, 2013), and the Additional Extended Discovery Period (April 1, 2014) for the Policy.

40. The Policy also contains the following provisions regarding notice of circumstances which could give rise to a Claim:

***

> If during the Policy Period, the Automatic Discovery Period or, if exercised, the Additional Extended Discovery Period, the Insureds become aware of circumstances which could give rise to a Claim for a Wrongful Act taking place before or during the Policy Period and give written notice of such circumstances and the other information referenced below to the Insurer during the Policy Period, the Automatic Discovery Period or, if exercised, the Additional Extended Discovery Period, then any Claims subsequently arising from such circumstances shall be considered to have been made during the Policy Year, the Automatic Discovery Period or, if exercised, the Additional Extended Discovery Period in which such notice of such circumstances and such other information was first given to the Insurer.
>
> The Insureds shall, as a condition precedent to exercising their rights under this Policy: (a) include within any notice of Claim or circumstance a description of the Claim or circumstances, the nature of the alleged Wrongful Act, the nature of the alleged or potential damage, the names of

>  actual or potential claimants and Insureds involved, and the manner in which the Insureds first became aware of the Claim or circumstances; and (b) give to the Insurer such other information and cooperation as the Insurer may reasonably request.

***

(*Id.*, GTC&L, CB007)

  41. The Sims Parties did not, during the Policy Year, the Automatic Discovery Period or the Additional Extended Discovery Period, give Travelers written notice of circumstances which could give rise to the Sims Lawsuit, or the information required by the provisions set forth in paragraph 40 above. Consequently, the Sims Lawsuit cannot be considered a Claim made during the Policy Period, the Automatic Discovery Period (if applicable) or the Additional Extended Discovery Period.

  42. The Policy does not provide coverage for the Sims Lawsuit because it does not constitute a Claim first made during the Policy Period, the Automatic Discovery Period, or the Additional Extended Discovery Period for the Policy. Travelers, therefore, is entitled to a declaratory judgment that the Policy does not provide coverage for the Sims Lawsuit, and that Travelers has no obligation to pay for defense or indemnity for the Sims Lawsuit.

  43. An actual controversy exists between Travelers and the Hershare Parties with respect to Travelers' obligations in connection with the Sims Lawsuit, requiring the Court's declaration of the parties' rights and obligations.

  44. Travelers has no adequate remedy at law.

  45. Travelers has reserved all of its rights under the Policy and applicable law. By seeking a declaratory judgment based on the foregoing provisions of the Policy, Travelers does not waive any potential coverage defenses pursuant to any of the Policy's terms, conditions, and exclusions. Developments in connection with the Sims Lawsuit or this declaratory judgment action may render additional defenses to coverage ripe for judicial determination.

## **REQUEST FOR RELIEF**

Plaintiff St. Paul Mercury Insurance Company therefore respectfully requests that the Court adjudicate and declare the rights of the parties, and that the Court:

a. Declare that there is no coverage under the Policy for the Sims Lawsuit because it is not a Claim first made during the Policy Period, Automatic Discovery Period, or Additional Extended Discovery Period for the Policy;

b. Declare that St. Paul Mercury Insurance Company has no obligation to defend, or advance defense costs to, Hershare or the Bank in connection with the Sims Lawsuit;

c. Declare that St. Paul Mercury Insurance Company has no obligation to indemnify Hershare or the Bank in connection with the Sims Lawsuit;

d. Declare that St. Paul Mercury Insurance Company has no obligation to pay for Loss in connection with the Sims Lawsuit; and

e. Grant such other relief as the Court may deem just and proper.

ST. PAUL MERCURY INSURANCE COMPANY


By: */s/ Christopher J. Bannon*
Christopher J. Bannon, ARDC #6196298
Amber O. LaFevers, ARDC # 6300467
ARONBERG GOLDGEHN DAVIS & GARMISA
330 N. Wabash Avenue, Suite 1700
Chicago, IL 60611
Telephone: (312) 755-3175
Facsimile: (312) 222-6375
cbannon@agdglaw.com
alafevers@agdglaw.com

*Counsel for St. Paul Mercury Insurance Company*

1779964v2